## WILLIAM HIX ET AL. v. J. W. ARMSTRONG.

### No. 1769. Decided January 8, 1908.

**1.—Guardian—Resulting Trust.**

A guardian, selling property of which one half belonged to herself and half to her wards, recovered judgment against the purchaser for the price, levied on a tract of his land, and purchased it at the execution sale, crediting the bid on her judgment. Held that she took the title to a half interest in the land so acquired in trust for her wards. (Pp. 275, 276.)

**2.—Same—Probate Court—Settlement of Guardian's Accounts.**

The approval of an annual report of a guardian, in which she charged herself with the purchase price of her ward's half interest in property sold by her and received credit for its expenditure in their behalf, could not affect the claim of the wards to an equitable interest in land to which she acquired title by use of a judgment for such purchase price partly belonging to the wards. They could maintain suit for their interest in the land without proceeding to set aside the order in probate. (P. 276.)

**3.—Same—Jurisdiction of County Court.**

The action of the County Court in approving a guardian's accounts could not affect the right of the wards to land the court having no jurisdiction to divest them of title. (P. 276.)

Questions certified from the Court of Civil Appeals for the Fifth District, on error from Johnson County.

*George D. Green*, for plaintiffs in error.—The evidence having established that Mary F. Duncan was the guardian of plaintiffs and

as such received into her possession the property of the plaintiffs with which she acquired the land in controversy, she held the title to said land as trustee for the plaintiffs. Moore v. Moore, 31 S. W. Rep., 532; Rev. Stats., 1895, art. 2555, 2557, 1853; Blackwood v. Blackwood, 92 Texas, 481; DeCordova v. Rogers, 97 Texas, 60; Logan v. Gay, 87 S. W. Rep., 852; Jones v. Parker, 67 Texas, 79; Read v. Henderson, 57 S. W. Rep., 412; Eastland v. Williams, 45 S. W. Rep., 78; Allen v. Stovall, 2 Texas Ct. Rep., 345; Wheeler v. Duke, 4 Texas Ct. Rep., 668.

Mary Duncan, as guardian, having purchased the land in question at execution sale made to satisfy the claim in favor of the estate which she represented by causing the purchase money to be credited on the claim, her purchase inured to the benefit of these plaintiffs, and no subsequent act or conduct on the part of Mrs. Duncan, divested these plaintiffs of their title to said land. McCoy v. Crawford, 9 Texas, 354.

Mary F. Duncan held the land in question as trustee for these plaintiffs and her annual account together with the order of the County Court thereon in no way affected the plaintiff's title to said land. McCoy v. Crawford, 9 Texas, 354, and other authorities cited; 2 Perry on Trusts, sec. 833.

*O. T. Plummer* and *Poindexter & Padelford,* for defendant in error.—The County Court of Johnson County, Texas, sitting in matter of probate being a court of general jurisdiction the order and judgment of said court approving the account of the guardian after having given notice is not subject to collateral attack. Wiseman v. Wheeler, 26 N. E. Rep., 1008; Murphy v. Sisters of Charity, 43 Texas Civ. App., 638; Martin v. Robinson, 67 Texas, 374; Barney v. Saunders, 16 Howard (N. S.), 535; Voorhees v. Voorhees, executor, 18 N. J. Eq. (3 C. Green), 223; Casttetter v. State ex rel Bradburn, 14 N. E., 388; Davis v. Hagler, 19 Pac., 628; McKee v. Whitten, 25 Miss., 31; Sherry v. Sansberry, 3 Ind., 320; Johnson v. Miller, 33 Miss., 553; Appeal of Yeager, 34 Pa. (10th Casey), 173; Sayles Rev. Stats., arts. 2601-2608, 2707-2718; 15 Am. & Eng. Enc. Law (2 ed.), 114, 115, and authorities; Parker v. Bowers, 84 S. W. Rep., 380; Williams v. Robinson, 63 Texas, 580; Nash v. Milburn, 25 Texas, 783; Murchison v. White, 54 Texas, 82.

The guardian of the plaintiffs having reported the $425, the one-half interest of her wards in the purchase price of the sale of the 113 head of cattle to the Probate Court of Johnson County, Texas, in the matter of the estate of her said wards, and the Probate Court having approved all expenditures which absorbed all of said $425, and the Probate Court having approved of the action of the guardian in charging herself with the $425 as cash and the plaintiffs having accepted the same by not filing any complaint against or attempting to have said order set aside after becoming 21 years of age but having acquiesced in the same, are estopped after electing to accept the same to attempt to trace the said funds in the land in controversy. Sayles Rev. Stats., art. 2707-2718; Parker v. Bowers, 84 S. W. Rep., 380; Williamson v. Robinson, 63 Texas, 580; Dunson v. Payne, 44

Texas, 539; DeCordova v. Rodgers, 97 Texas, 60; 1 Am. & Eng. Enc. of Law (2d ed.), 889, 23 Id., 570.

If plaintiffs in error should not be estopped by their nonaction or presumed ratification of their guardian's annual account which was approved by the court, then said guardianship must still be pending unsettled in the Probate Court, which has the exclusive jurisdictional right to administer said estate, and to force a settlement between plaintiffs in error and their guardian and to revise and to scrutinize her annual account and to correct the same and also to correct all irregularities, errors and mistakes that she may have committed in the administration of their estate. Buchanan v. Bilger, 64 Texas, 592.

The District Court has no original jurisdiction to revise the proceedings of a County Court sitting in matters of probate; its jurisdiction in this respect is entirely appellate. Franks v. Chapman, 60 Texas, 46; Buchanan v. Bilger, 64 Texas, 589; Reems, Receiver, v. Masterson, 80 Texas, 52; Sabrinos v. Chamberlain, 76 Texas, 629.

The decree of a surrogate having jurisdiction, settling the accounts of an executor, has, until opened or set aside, the same conclusive effect as a judgment of any other court. Reynolds v. Brumagim, 54 Cal., 257; RoBards v. Lamb, 89 Mo., 303; Succession of Peytavin, 10 Rob., 118; Succession of Egana, 18 La. Ann., 263; Tate v. Norton, 94 U. S., 746; Grimstead v. Huggins, 81 Tenn., 728; Barney v. Saunders, 16 How., U. S., 535; Voorhees v. Voorhees, 18 N. J. E., 223; Wiseman v. Wheeler, 26 N. E. Rep., 1008; Nash v. Milburn, 25 Texas, 783; State ex rel. Tourville v. Roland, 23 Mo., 95; Whittelsey v. Dorsett, 23 Mo., 236; Newcomb v. St. Peters Church, 2 Sanf. Ch., 636

MR. JUSTICE BROWN delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals of the Fifth District. The statement and questions are as follows:

"This action was brought by J. S., W. H. and Ernest Hix, plaintiffs in error, against J. W. Armstrong, defendant in error, to recover an undivided one-half interest in and to a certain tract of land in Johnson County, Texas, and for rents.

"Defendant answered disclaiming any interest in one hundred acres of the land, describing the one hundred acres by field notes, not guilty as to the remainder, and adverse possession of three and five years, and vouched in Mary F. Duncan as warrantor.

"Plaintiffs by supplemental petition denied the pleas of defendant and specially that they were minors when Armstrong took possession, that Mary F. Duncan became their guardian and while acting as such she sold a certain lot of cattle, the property of herself and these plaintiffs, to one Hix Duncan, taking his note for purchase price thereof, that said note was not paid; suit was brought thereon and judgment was recovered by her against Hix Duncan; that execution was issued and levied on said land; said land sold thereunder, Mrs. Duncan becoming the purchaser, and the price bid at said sale, $500, credited on said judgment. That Mary F. Duncan having

acquired the said land in that manner she held the same in trust for said plaintiffs, and that said defendant was aware of said facts when he purchased from Mrs. Duncan.

"Defendant replied and alleged that Mrs. Duncan as guardian had accounted to the Probate Court of Johnson County for the sale of said cattle, which account was duly approved by said court, and that said plaintiffs had ratified the same, more than two years having elapsed since they arrived at age and no action having been brought by them to set aside or amend said judgment in the Probate Court.

"A trial was had before a jury and the court instructed a verdict for defendant. A judgment was rendered for defendant and the plaintiffs prosecute this writ of error.

"The evidence shows that in 1883 Elzie Hix died, leaving surviving him a widow, Mary F. Hix, and four children, Lena, Ernest, William and John Hix. Lena died, leaving as heirs her mother and three brothers. Elzie Hix, at his death, owned certain property, among which was a lot of cattle, the community property of himself and Mary F. Hix, his surviving widow. Mary F. Hix subsequently married one Duncan, and on June 4, 1885, was appointed guardian of the estate of said children. She qualified under said appointment and returned an inventory of the children's property into court, which included the children's interest in the lot of cattle, which was one-half. She sold her and her wards' interest in the cattle to one Hix Duncan, for which she received Duncan's note for $850, the note being made payable to her individually. Thereafter, Duncan having defaulted in the payment of said note, Mary F. Duncan brought suit thereon and recovered judgment in her name for the sum of $980. Execution was issued and levied on 239 acres of land, the property of Hix Duncan. The land was sold, Mary F. Duncan bidding in the same for $500, which amount was credited on the judgment and the land deeded to her. Mrs. Duncan, in September, 1894, deeded the land to J. W. Armstrong in consideration of $3,600; $50 of which was paid in cash and two notes executed, one for $750, payable the following December and the other one for $800, payable November, 1895, and the assumption by Armstrong of a $2,000 mortgage that had been given on the land by Hix · Duncan.

"Subsequently in 1898 Armstrong not having paid all that was due on his notes Mrs. Duncan sued him to recover the balance due and to settle the same Armstrong conveyed to her 100 acres of said land, she assuming $900 of said mortgage.

"On March 16, 1894, Mrs. Duncan filed with the Probate Court of Johnson County, annual account as guardian of said children, charging herself, among other things, with $425, one-half of the proceeds of sale of said cattle, and showing expenditures for said minors, consisting of taxes on real property, physicians' bills, for clothing, schooling, boarding of said minors and burial expenses and tombstone for Lena Hix, the account of each ward being stated separately and showing each ward indebted to her, but remitting the surplus above what she had received. This account was duly approved by the court, which was entered of record, and at the same time the court decreed the sale of a certain tract of land for the support and

maintenance of said wards. There was no further action had by the Probate Court in the guardianship matter shown by the record. No action was ever brought by plaintiffs to set aside and annul the decree of the Probate Court allowing and approving Mrs. Duncan's annual account and this suit was brought after the youngest had become of legal age. They claim that said order of the Probate Court is null and void on its face as the court had no authority to allow the guardian the amount expended for the maintenance of said wards, the court prior to said order never having, by a decree regularly made, authorized such expenditures to be made out of the corpus of their estate.

"Mrs. Mary Duncan had obtained the judgment against Hix Duncan, had the land levied on and sold and bid in by her and the bid credited on the judgment before the filing and approving of her annual account with the Probate Court. That no final account was ever filed and approved and the guardianship never closed by the Probate Court. That in her annual account mentioned in original statement she included the amounts of debits and credits as to Willie Hix, but in entering her account on the minutes that part relating to the debits and credits as to Willie Hix was not entered, but omitted from the record.

"Question 1. Under the foregoing facts were the children authorized to bring this suit for the land, the order approving the guardian's account of the sale of said cattle and charging herself with the proceeds thereof never having been set aside or annulled; or did the wards acquire such an interest in the land by reason of the guardian's purchase and crediting the bid on the judgment, as authorized them to bring a direct suit to recover it?

"Question 2. Is the approval of a guardian's annual account by the Probate Court such a judgment that it can not be attacked in a collateral proceeding, as is attempted in this case; or in other words, is it binding on the plaintiffs until set aside by a direct proceeding for that purpose."

We answer the first question in the affirmative. When Mrs. Duncan purchased the land in question, crediting the amount of the bid on the judgment, which belonged jointly to her and her children, the law at once vested in the children a one-half interest in the land and Mrs. Duncan held the land in trust for the benefit of her wards in the proportion of their interest in the judgment upon which the purchase was credited. McCoy v. Crawford, 9 Texas, 353; Neill v. Keese, 5 Texas, 23.

In the first case cited above, Crawford, the administrator, caused land to be sold under an execution issued upon a judgment in favor of his intestate's estate, and, at the sale, purchased the land, taking a deed in his own name. Crawford reported to the court the amount of the judgment as a charge against himself, thereby accounting to the estate for the debt which was satisfied by the sale. It was claimed in that case, as in this, that the fact that the administrator accounted for the debt vested the title in him, but Judge Wheeler, speaking for the court, said: "Moreover, the administrator, Crawford, purchased with the funds of the estate; and if the judg-

ment against Grigsby had been valid and the sale legal, still the purchase would have inured to the benefit of the estate. It is well settled that where one buys land with the money of another and takes the deed in his own name, a trust results in favor of the person whose money was employed in making the purchase. The latter is the equitable owner of the land, and the purchaser is a mere trustee and holds for the benefit of him who paid the purchase money."

The order approving the annual account of Mrs. Duncan does not purport to adjudicate the rights of the heirs in the land. Indeed, the County Court had no jurisdiction to divest them of their title if it had attempted to do so, neither could the act of Mrs. Duncan, the guardian, in accounting for the debt, discharge the trust which the law had fixed upon her by the act of purchase in her capacity as guardian with the funds which belonged to her wards. There was no necessity for the wards to have the order set aside in order to give them a right to maintain this action.

It is unnecessary for us to answer the second question, because in no event could the order approving the annual account in any way affect the rights of the wards in the land in question.